<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERNESTO R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 20-6170 (SDW) <br><br> **OPINION** <br><br> November 17, 2021 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Ernesto R.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Hilton Miller's ("ALJ Miller") denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Miller's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.      **PROCEDURAL AND FACTUAL HISTORY**

    A.      **Procedural History**

Plaintiff filed for DIB on June 7, 2017, and for SSI on July 6, 2017, alleging disability beginning on March 1, 2005, due to paranoid schizophrenia, hypertension, depression, and anxiety. (D.E. 7 (Administrative Record ("R.")) at 21, 270–77, 285.) The state agency denied Plaintiff's applications at the initial and reconsideration levels. (R. 112–22.) Plaintiff received a hearing before ALJ Miller on January 10, 2019, and the ALJ issued a written decision on February 1, 2019, finding that Plaintiff was not disabled. (R. 21–31, 37–62.) The Appeals Council denied review on March 23, 2020, and Plaintiff subsequently filed the instant appeal in this Court. (R. 1–4; D.E. 1.) The parties timely completed briefing and Plaintiff did not file a reply. (D.E. 12, 15.)

    B.      **Factual History**

Plaintiff is 55 years old and has a high school education. (*See* R. 270, 286.) He previously worked as a warehouse worker, which is unskilled work performed at a medium level of exertion. (R. 29, 54.) The following is a summary of the medical evidence in the record.

Plaintiff saw primary care physician Mauricio Velasco, M.D., for the management of his routine medical issues. According to treatment notes from 2018, Plaintiff stood 5'11" and weighed approximately 284 pounds, which correlated with a body mass index (BMI) of 39.6. (R. 491, 494, 497.) Plaintiff's hypertension was "controlled" with medications. (R. 495, 498.) In Dr. Velasco's opinion, Plaintiff's obesity and hypertension did not cause any exertional limitations. (R. 454–55, 483–84.) State agency consultants Howard Goldbas, M.D., and Joseph Sobelman, M.D., reviewed Plaintiff's medical records and also determined that Plaintiff's physical impairments did not cause any severe functional limitations. (R. 70, 86.) Plaintiff visited the emergency room multiple times during the relevant period for issues such as headaches and knee, back, and ear pain. (R. 383–

428.) However, Plaintiff's physical examinations were always normal, and physicians always discharged him the same day in improved condition. (R. 387–88, 398–99, 411, 415, 426–27.)

With respect to his mental impairments, Plaintiff has a history of schizoaffective disorder characterized by alleged symptoms of auditory and visual hallucinations, paranoia, obsessions, racing thoughts, difficulty sleeping, dysphoric moods, crying spells, hopelessness, increased agitation, appetite fluctuations, and difficulty concentrating. (R. 309–11, 369–70, 449.) The record shows that he received mental health treatment between May 2014 and June 2014. (R. 362.) At his last treatment during this period, he reported that he was no longer depressed or anxious and that he did not notice any auditory hallucinations. (*Id.*)

Plaintiff only resumed mental health treatment in June 2017, when he underwent a psychiatric assessment with Maria Garcia, M.D. (R. 430–35.) At that time, Plaintiff complained of a lifelong history of mental health issues. (R. 430.) On mental status examination, Plaintiff demonstrated sad mood and poor insight, but he was alert and oriented with a friendly attitude, relatable behavior, calm and goal directed speech, logical thoughts, no evidence of hallucinations or delusions, and good judgment, impulse control, and memory. (R. 433.) Dr. Garcia diagnosed Plaintiff with paranoid schizophrenia and prescribed him Zoloft and Zyprexa. (R. 434–35.) However, Plaintiff was inconsistent with his treatment and missed multiple appointments over the next few months. (*See, e.g.*, R. 436–37, 469–74.) In August and September 2017, Dr. Garcia modified Plaintiff's medication regimen due to ongoing symptoms and drug side effects. (R. 467.)

Also in August 2017, Plaintiff saw Kim Arrington, Psy.D., for a consultative examination at the request of the state agency. (R. 449.) Plaintiff complained of dysphoric mood, increased agitation, anxiety-related symptoms, auditory hallucinations, and paranoid thoughts. (*Id.*) On mental status examination, Plaintiff had mildly disorganized thought processes, mildly impaired

recent and remote memory, and fair to poor judgment. (R. 450–51.) However, Dr. Arrington observed him to be cooperative with adequate social skills, good grooming, fluent speech, intact attention and concentration, average intellectual functioning, and fair insight. (*Id.*) Based on this examination, Dr. Arrington assessed Plaintiff with schizoaffective disorder and cannabis use disorder in remission. (R. 451.) Dr. Arrington opined that Plaintiff could follow and understand simple directions and instructions, maintain attention and concentration, and maintain a regular schedule. (*Id.*) However, Dr. Arrington noted that Plaintiff would have difficulty learning new tasks and performing complex tasks due to problems with memory and poor motivation. (*Id.*)

In September and October 2017, state agency psychological consultants Crystal Duclos, Psy.D., and Amy Brams, Ph.D., reviewed Plaintiff's medical records and determined that he had no more than moderate limitations in all domains of work-related mental functioning. (R. 71, 87.) Dr. Duclos and Dr. Brams found that Plaintiff remained capable of understanding, remembering, and carrying out one- and two-step instructions; having occasional social interactions with the general public and coworkers; and adapting to minor changes in the work setting; but that he would benefit from structure and predetermined work goals. (R. 74–76, 90–92.)

Plaintiff transferred care from Dr. Garcia to Daniel Sanchez, M.D., in March 2018. (R. 590.) He reported that he had been off medication for about two months, but he denied any suicidal or homicidal ideation or auditory/visual hallucinations. (R. 590.) A mental status examination was grossly normal, showing that Plaintiff had cooperative attitude, appropriate behavior, clear speech, neutral mood, appropriate affect, no formal thought disorder, and fair memory, insight, concentration, impulse control, and judgment. (*Id.*) Dr. Sanchez assessed Plaintiff with a "[s]evere episode of recurrent major depressive disorder, with psychotic features," and restarted Plaintiff on psychotropic medications. (R. 591.)

Plaintiff thereafter regularly went to his appointments with Dr. Sanchez as well as weekly individual therapy. (R. 513–92.) Although his symptoms waxed and waned, they generally improved. For example, in April 2018, Plaintiff reported medication compliance, no side effects, and improved sleep, and that he was living alone for four years, preparing his own meals, and visiting his mother every day. (R. 585.) However, he continued to experience "sporadic auditory hallucination[s]." (*Id.*) In June 2018, Plaintiff reported that he was compliant with medications and that he was walking every day without fear, doing more activities, and having fewer auditory hallucinations. (R. 579.) Plaintiff experienced a reemergence of symptoms in September and early October 2018, including fearfulness, loneliness, and auditory hallucinations, but he demonstrated the ability to cope with consistent treatment. (R. 533–56.) By the end of October 2018, Plaintiff reported that he was feeling "very energetic" and not depressed, and he denied auditory or visual hallucinations. (R. 539.) In November 2018, Plaintiff stated that he was feeling less depressed, angry, and volatile, and that his auditory hallucinations had decreased. (R. 533.) Most recently, in January 2019, Plaintiff reported that he had no auditory/visual hallucinations. (R. 513.) Although he indicated that he woke up 2–3 times a night, he also indicated that he was "able to cope with daily living skills," had a stable mood and a good appetite, and had no suicidal/homicidal ideation. (*Id.*)

    **C.**    **Hearing Testimony**

At the administrative hearing on January 10, 2019, Plaintiff was represented by counsel and testified through an interpreter. (R. 21.) ALJ Miller heard testimony from Philip R. Braun, Ph.D., an impartial medical expert. (R. 21, 42.) Dr. Braun opined that Plaintiff's schizoaffective disorder did not meet the requirements of Listing 12.03 (schizophrenia spectrum and other psychotic disorders). (R. 42–44.) He acknowledged that Plaintiff also suffered from major

5

depressive disorder, but noted that Plaintiff's depression had similar features to his primary mental health impairment—schizoaffective disorder. (R. 47.) Dr. Braun concluded that Plaintiff demonstrated no more that moderate limitations in all domains of work-related mental functioning (R. 43–44.) He further noted that Plaintiff should have limited interactions with coworkers and the public, but he could have unlimited interactions with supervisors. (R. 44.) Dr. Braun also found that Plaintiff's impairments would interfere with complex tasks, but not simple tasks. (*Id.*)

ALJ Miller heard additional testimony from Mary Vasishth ("VE Vasishth"), an impartial vocational expert. (R. 21, 51–52.) VE Vasishth testified that an individual with Plaintiff's vocational background and residual functional capacity ("RFC"), as assessed by ALJ Miller, would be capable of working Plaintiff's previous job as a warehouse worker. (R. 29.) Such an individual could also perform other occupations such as hospital cleaner, kitchen helper, and laundry worker, which existed in significant numbers in the national economy. (R. 30.)

## II.   LEGAL STANDARD

### A.   Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

B.     **The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the

claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the

individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

#### A. The ALJ's Decision

On February 1, 2019, ALJ Miller issued a decision concluding that Plaintiff was not disabled from March 1, 2005, through the date of the decision. (R. 21–31.) At step one, the ALJ found that Plaintiff had engaged in substantial gainful employment from 2006 through 2015, but not since 2016. (R. 23.) The ALJ therefore continued the evaluation only for the years 2016 –

2018. (*Id.*) At step two, he found that Plaintiff had non-severe hypertension and the following severe impairments: schizoaffective disorder, morbid obesity, and cannabis use disorder in remission. (R. 24.)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing, even when his obesity was factored in. (R. 24–25.) In particular, Plaintiff's mental impairments did not meet the requirements of Listing 12.03 for schizophrenia spectrum and other psychotic disorders. (R. 24.) For this listing, a claimant must prove that he meets both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03. The paragraph B criteria require at least one extreme or two marked limitations in any of four areas of mental functioning. *See id.* § 12.03(B).[2] The paragraph C criteria require that the mental disorder be "serious and persistent," and supported by evidence of both medical treatment and marginal adjustment. *See id.* § 12.03(C). Based on Plaintiff's treatment notes, ALJ Miller found that Plaintiff's limitations in all areas of functioning were only "moderate." (R. 24–25.) Because Plaintiff's mental impairments did not cause two "marked' limitations or one "extreme" limitation, the paragraph B criteria were not satisfied. (R. 25.) ALJ Miller also found that the paragraph C criteria were not met because Plaintiff's treatment notes and hearing testimony demonstrated that he was able to care for himself independently, function outside of the home, and adapt to new demands and changes in the environment at a minimum level. (*Id.*)

Assessing Plaintiff's RFC, the ALJ found that Plaintiff could:

> [P]erform medium work . . . except lift and/or carry up to 50 pounds occasionally; 25 pounds frequently; stand and/or walk [and] sit with normal breaks for a total of about 6 hours in an 8-hour workday; [] occasionally climb ramps and stairs; no

---

[2] These areas of functioning are (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03(B).

11

> ladders, ropes, or scaffolds; that also takes into account non[-]exertional limitations allowing the performance of simple, routine, and repetitive tasks that can be explained[,] (svp 1-2)[,] which involve making simple decisions, and only occasional changes in routine; and only occasional and superficial contact with others.

(R. 25.) At step four, the ALJ found that someone with Plaintiff's RFC could perform Plaintiff's past job as a warehouse worker. (R. 29.) At step five, the ALJ relied on VE Vasishth's testimony to find that Plaintiff could additionally work as a hospital cleaner, kitchen helper, and laundry worker—jobs that existed in significant numbers in the national economy. (R. 30.) ALJ Miller therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (*Id.*)

### B. Analysis

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See* D.E. 12 at 1.) Plaintiff asserts that the ALJ failed to properly consider Plaintiff's obesity and major depressive disorder in reaching his decision. (*See id.* at 11–39.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that although ALJ Miller recognized that Plaintiff suffers from "morbid obesity" and identified it as a "severe impairment[]," (R. 24), he did not adequately consider Plaintiff's obesity in his step 3 analysis of the listings or in his formulation of Plaintiff's RFC. (*See* D.E. 12 at 14–18.) "[A]n ALJ must meaningfully consider the effect of a claimant's obesity individually and in combination with her impairments" when assessing a social security claim at step three and beyond. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). However, it is the plaintiff's burden to establish not just that "obesity *can* impair [her] ability to perform basic work activities," but to "specify[] *how* her obesity . . . affected her ability to perform basic work activities." *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020).

Here, the ALJ found that Plaintiff's obesity was a severe impairment at step two because his obesity "significantly limit[ed] the ability to perform basic work activities." (R. 24.) Then, at step three, the ALJ applied SSR 02-1p to consider Plaintiff's obesity in combination with his other impairments and determined that his condition did not meet or equal a listing. (*See id.*) The ALJ specifically addressed Plaintiff's obesity when discussing Plaintiff's severe impairments and RFC, citing medical evidence that referenced his height and weight and calculating his BMI. (R. 28 (citing R. 454).) In consideration of Plaintiff's physical impairments, the ALJ reduced Plaintiff's physical RFC from a presumed ability to do heavy work to just medium work, and added multiple restrictions: (1) Plaintiff can only lift or carry up to 50 pounds occasionally, and only up to 25 pounds frequently; (2) he can only stand, walk, and sit with normal breaks for up to 6 hours in an 8-hour workday; (3) he can only occasionally climb ramps and stairs; and (4) he is prohibited from using ladders, ropes, or scaffolds. (R. 25–26.) These restrictions adequately accommodate Plaintiff's obesity and hypertension as documented by his medical records. The ALJ found Dr. Velasco's opinion that Plaintiff had no exertional limitations to be particularly persuasive, noting that (1) Dr. Velasco had treated Plaintiff over an extended period of time, (2) Plaintiff did not require any significant treatment for physical impairments during that time, (3) Plaintiff's hospital visits were generally for medication and never resulted in admission, and (4) Plaintiff's primary impairments were mental rather than physical. (R. 28.) Dr. Velasco's opinion was both consistent with his treatment notes and supported by the opinions of the two state agency physicians, Drs. Goldbas and Sobelman, who agreed that Plaintiff's impairments did not result in physical functional limitations. (*See* R. 28, 70, 86.)

In sum, the ALJ adequately addressed Plaintiff's obesity by finding that it was a severe impairment, referencing it throughout the sequential evaluation process, citing specific pages in

the record documenting an obese BMI, finding the opinion of Plaintiff's primary care physician to be persuasive, and significantly reducing Plaintiff's RFC accordingly. Plaintiff presented no evidence that he could not perform basic activities associated with work, and he failed to demonstrate that his obesity caused him to suffer from medically determinable impairments. This Court therefore concludes that, with respect to obesity, ALJ Miller's step three findings and RFC determination are supported by substantial evidence.

Second, Plaintiff argues that the ALJ failed to identify Plaintiff's "major depressive disorder" as a severe impairment at step two or consider it in his analysis of the listings and Plaintiff's RFC. (*See* D.E. 12 at 18–24.) An ALJ's decision should be "read as a whole," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), and ALJs are not required to discuss or list every impairment or diagnosis in the record, *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (stating that the erroneous identification of certain severe impairments as non-severe is harmless where the ALJ otherwise finds in claimant's favor at step two). The step two decision is a threshold analysis, and once the ALJ finds any one impairment severe, he may move on to consider all impairments, severe or not, at subsequent steps. *See Desando v. Astrue*, Civ. No. 07-1823, 2009 WL 890940, at *5 (M.D. Pa. Mar. 31, 2009) ("Because the ALJ found that Mr. Desando did have severe impairments sufficient to move beyond the second step . . . , his failure to address fibromyalgia is irrelevant and harmless."); *Bliss v. Astrue*, Civ. No. 08-980, 2009 WL 413757, at *1 n.1 (W.D. Pa. Feb.18, 2009) ("[A]s long as a claim is not denied at Step Two, it is not generally necessary for the ALJ to have specifically found any additional alleged impairments to be severe."). Accordingly, the relevant question is not whether every severe impairment has been named, but whether the claimant has at least one severe impairment that justifies proceeding

to the next steps of the sequential evaluation process, where the ALJ must consider the combined effects of all of the claimant's impairments, severe and non-severe.

Here, the ALJ identified both physical and mental severe impairments at step two and then proceeded through the sequential evaluation process. (R. 24.) At the later steps, he considered the entire record, including Plaintiff's reported symptoms, to determine Plaintiff's RFC. (R. 24–29.) Reading the decision as a whole, it is clear that Plaintiff's major depressive disorder was subsumed in the ALJ's analysis of Plaintiff's schizoaffective disorder. (R. 26–29.) In assessing Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints of difficulty sleeping, agitation, dysphoric moods, hopelessness, and difficulty concentrating. (R. 27.) In analyzing Plaintiff's mental health treatment records, the ALJ noted that Plaintiff's symptoms improved with consistent treatment. (R. 26–28.) The ALJ also considered the testimony of impartial medical expert Dr. Braun, who acknowledged that Plaintiff carried the additional diagnosis of major depressive disorder but noted that Plaintiff's depression had similar features to Plaintiff's primary mental health impairment—schizoaffective disorder. (R. 47.) The ALJ adequately accounted for any mental functional limitations resulting from Plaintiff's major depression that were supported by the record by restricting Plaintiff to: (1) simple, routine, and repetitive tasks that can be explained, (2) unskilled work that involves making only simple decisions, (3) only occasional changes in routine, and (4) only occasional and superficial contact with others. (R. 26.) Indeed, in April 2018, Plaintiff reported improved sleep and stated that he lived independently and prepared his own meals. (R. 585.) In June 2018, Plaintiff indicated that he was compliant with medications and reported that he was walking every day without fear, doing more activities, and having fewer auditory hallucinations. (R. 579.) In October 2018, Plaintiff reported that he felt "very energetic" and not depressed, and he denied auditory or visual hallucinations. (R. 539.) In November 2018,

Plaintiff stated that he was feeling less depressed, angry, and volatile, and that his auditory hallucinations had decreased. (R. 533.) In January 2019, Plaintiff indicated that he was able to cope with daily living skills, he had stable mood and good appetite, and he denied suicidal/homicidal ideation or auditory/visual hallucinations. (R. 513.)

To the extent Plaintiff argues that the ALJ erred by not specifically mentioning Listing 12.04 (Depressive, Bipolar, and Related Disorders), any such error was harmless because Plaintiff could not meet all of the requirements of that listing. The ALJ explicitly determined that Plaintiff did not satisfy the paragraph B criteria of Listing 12.03, and thus sufficiently addressed Listing 12.04, which has the same criteria. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03, *with id.* § 12.04. Specifically, to satisfy the paragraph B criteria under these listings, a claimant's impairments must result in extreme limitation of one (or marked limitation of two) of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03(B), 12.04(B). The ALJ addressed each of these four areas of mental functioning, providing adequate rationales and thorough citations to the medical evidence to explain why he found that Plaintiff's mental impairments did not result in more than moderate limitations. (R. 24–25.) Because Plaintiff's mental impairments did not cause at least one extreme limitation or two marked limitations, he did not meet the paragraph B criteria for either Listing 12.03 or 12.04. (*See* R. 24–25.)

Similarly, the paragraph C criteria of both listings require that the mental disorder be "serious and persistent," and supported by evidence of both medical treatment and marginal adjustment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03(C), 12.04(C). ALJ Miller correctly found that the paragraph C criteria were not met because Plaintiff's treatment notes and hearing

16

testimony demonstrated that he was able to care for himself independently, function outside of the home, and adapt to new demands and changes in the environment at a minimum level. (R. 25.) Accordingly, the ALJ's omission of an explicit Listing 12.04 analysis was harmless error.

Reviewing the ALJ's decision and the medical record as a whole, it is clear that Plaintiff is able to perform a reduced range of unskilled medium-exertion work, as opined by multiple treating and consultative physicians and psychologists. Substantial evidence—*i.e.*, more than a mere scintilla of evidence—supports the ALJ's decision and this Court will therefore affirm.

### IV.   CONCLUSION

For the foregoing reasons, this Court finds that ALJ Miller's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties